UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIN HANNAH,

        Plaintiff,      :

  v.                                    Case No. 2:23-cv-3439
                                        Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

KOMAN HOLDINGS, LLC, *et al.*,      :

        Defendants.

OPINION AND ORDER

Erin Hannah brought this action against KOMAN Holdings, LLC, and IMAQ Resources, LLC, alleging violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and Ohio common law. This matter is before the Court on Defendants' Motion to Dismiss the Amended Complaint (Mot., ECF No. 19). For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.   BACKGROUND

According to Ms. Hannah, KOMAN is a wholly owned subsidiary of the Natives of Kodiak, Inc., which is an Alaska Native Corporation ("ANC") based in Kodiak, Alaska. (First Am. Compl. ("FAC"), ECF No. 13, ¶ 5; Affidavit of Melanie Peire ("Peire Aff."), ECF No. 19-1, ¶ 3.) In turn, IMAQ is a wholly owned subsidiary of KOMAN.[1] (FAC, ¶ 6.)

---

[1] The affidavit in support of Defendants' Motion provides that KOMAN and IMAQ are both wholly owned subsidiaries of the Natives of Kodiak. (Peire Aff., ¶ 4.)

Ms. Hannah worked for Defendants from October 2021 until she was terminated in June 2022.[2] (FAC, ¶ 14.) Amanda Cascio, KOMAN's Senior Director of Human Resources, recruited her. (*Id.*, ¶ 17.) After completing negotiations with Ms. Cascio about the position, Ms. Hannah's term of employment started well, as evidenced by her receipt of a bonus and an "exceptional" performance review within six months of her hiring. (*Id.*, ¶¶ 18–24, 28.)

But in April 2022, Ms. Hannah began to experience mental health issues and became concerned that she was becoming alcohol dependent. (FAC, ¶ 30.) When she told her supervisor, Cheryl Shimko, that she was seeking treatment, Ms. Shimko suggested that she could take a leave of absence if needed. (*Id*, ¶¶ 31–32.) Then, on April 8, Ms. Hannah was hospitalized due to suicidal ideation. (*Id.*, ¶ 33.) Matthew Harisiades (Ms. Hannah's Treatment Case Manager) emailed Ms. Cascio and Ms. Shimko shortly thereafter to advise them that Ms. Hannah had been admitted to an in-patient rehabilitation program and to request information to assist Ms. Hannah in applying for a leave of absence. (*Id.*, ¶¶ 34–35.)

KOMAN approved a leave of absence for Ms. Hannah from April 11 through April 29, 2022. (FAC, ¶¶ 37–38.) When she sought to extend her leave until May 18, Ms. Hannah met with Ms. Cascio and Mr. Harisiades via Zoom at Ms. Cascio's

---

Defendants' exact corporate structure is not dispositive of any issues raised in the pending Motion.

[2] IMAQ employed Ms. Hannah from October 2021 until her employment was transferred to KOMAN in December 2021. (FAC, ¶ 27; Peire Aff., ¶ 8.) She remained a KOMAN employee until her termination in June 2022. (Peire Aff., ¶ 8.)

2

request. (*Id.*, ¶¶ 39–41.) During that Zoom meeting, Ms. Cascio raised performance issues and insisted on receiving a medical release so that Defendants could obtain summary notes about Ms. Hannah's treatment. (*Id.*, ¶ 44.) Ms. Hannah was also asked how much longer she would be in treatment and was told that she needed to participate in outpatient therapy. (*Id.*, ¶¶ 45–46.)

After the Zoom meeting, Ms. Hannah discussed with Mr. Harisiades whether she should return to her job and under what circumstances. (FAC, ¶ 48.) Mr. Harisiades then wrote to Defendants to explain Ms. Hannah's treatment and progress, and he confirmed that she was planning to undergo outpatient treatment. (*Id.*, ¶¶ 49–50.) Mr. Harisiades requested that Defendants allow Ms. Hannah to return to work part-time to re-acclimate to her position and in consideration of her enrollment in outpatient therapy. (*Id.*, ¶ 51.) Mr. Harisiades subsequently indicated that the part-time accommodation would be needed for only three to four weeks. (*Id.*, ¶ 52.)

Ms. Cascio informed Ms. Hannah that she could not have a temporary part-time position and instead offered her a permanent part-time position on the condition that she sign a Last Chance Agreement. (FAC, ¶¶ 54, 56.) Ms. Cascio said that Ms. Hannah could not return to her previous role because of her performance issues and because the job was stressful and demanding. (*Id.*, ¶ 55.) Unbeknownst to Ms. Hannah, Defendants had hired a new employee to perform her duties while she was in treatment. (*Id.*, ¶ 64.)

3

Although she did not like the terms of the Last Chance Agreement and did not agree with Ms. Cascio's characterizations of her past performance or her abilities, Ms. Hannah accepted the permanent part-time position, believing that she would ultimately be restored to her previous position. (FAC, ¶¶ 56–60.) She returned to work on May 23, 2022, and spent the next month training two employees, including the person who had been hired to replace her. (*Id.*, ¶¶ 65, 68.) During that time, she successfully participated in outpatient treatment and resumed many of her former work duties. (*Id.*, ¶ 69.)

On June 22, 2022, Ms. Cascio informed Ms. Hannah that her position was being eliminated due to budget cuts. (FAC, ¶ 72.) Ms. Hannah believes that she was the only employee terminated. (*Id.*, ¶ 74.)

After complying with the prerequisites for filing suit, Hannah brought this action. (FAC, ¶ 76.) She asserts four claims against KOMAN, including disability discrimination and retaliation in violation of the ADA (Counts I and II) and the Rehabilitation Act (Counts III and IV). (*Id.*, ¶¶ 77–106.) She also alleges a promissory estoppel claim (Count V) against both Defendants. (*Id.*, ¶¶ 107–122.)

II. ANALYSIS

Defendants seek dismissal of Ms. Hannah's ADA claims pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction over these claims. (Mot., PAGEID # 91.) They seek dismissal of Ms. Hannah's Rehabilitation Act and promissory estoppel claims under Federal Rule of

4

Civil Procedure 12(b)(6), arguing that she has failed to state a claim upon which relief may be granted. (*Id.*)

### A. Subject Matter Jurisdiction over ADA Claims

Defendants challenge the Court's subject matter jurisdiction over Ms. Hannah's ADA claims on the ground that KOMAN, as an ANC, is not a "covered employer" under that statute and is thus exempt from its coverage. (Mot., PAGEID # 99.) This argument is more appropriately addressed, however, under Rule 12(b)(6), not Rule 12(b)(1).

Federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). Relevant here, courts have "federal question" jurisdiction over colorable claims "arising under" the Constitution or laws of the United States. 28 U.S.C. § 1331; *see also Taborac v. NiSource, Inc.*, No. 2:11-CV-498, 2011 WL 5025214, at *2 (S.D. Ohio Oct. 21, 2011) (Economus, J.). Some courts have approached the question of whether a defendant meets a federal statute's definition of "employer" as one implicating subject matter jurisdiction, reasoning that there is no federal question if the defendant is not subject to suit under the statute. *See, e.g.*, *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607–08 (6th Cir. 1998), *abrogated by Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007) (where defendant is not an "employer" as defined under the FMLA, plaintiff's claim does not arise under federal law to confer subject matter jurisdiction). However, the Supreme Court concluded that this reasoning "erroneously conflates subject-matter

5

jurisdiction with failure to state a claim on which relief can be granted." *Arbaugh v. Y & H Corporation, dba Moonlight Café*, 546 U.S. 500, 511–14 (2006). In *Arbaugh*, the defendant argued in response to the plaintiff's Title VII claim that it did not meet the Title VII definition of "employer" because the statute "limit[s] the definition of 'employer' to include only those having 'fifteen or more employees.'" *Id*. at 503 (quoting 42 U.S.C. § 2000e(b)). Observing that this employee threshold appears in a separate provision that "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," the Supreme Court held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id*. at 516; *see also Gunter v. Bemis Co., Inc.*, 906 F.3d 484, 492 (6th Cir. 2018) (citation omitted) ("Congress must 'clearly' state that a provision creates a jurisdictional limitation before we will treat it as one."). Thus, Title VII's employee-numerosity requirement "is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id*.

Since *Arbaugh*, lower courts have applied its reasoning to similar employee threshold requirements in the ADA and the FMLA. *See, e.g.*, *Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 549 (6th Cir. 2006); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012); *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 357 n.29 (5th Cir. 2006). Courts have also applied *Arbaugh* in other contexts. *See, e.g.*, *Crawford v. United States*, No. CIV.A. 3:04-CV-2619, 2006 WL 2167409, at *14 (N.D. Tex. Aug. 2, 2006), *aff'd sub nom. Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369 (5th Cir. 2007) (finding "the exclusion of the United States as a

6

covered entity under the ADA" to be a jurisdictional issue); *Berry v. Univ. Sch. of Nashville*, No. 3:19-CV-00830, 2020 WL 3268732, at *6 (M.D. Tenn. June 17, 2020) (question of whether defendant was a joint employer under the FMLA considered jurisdictional).

In the context of this case, to determine whether Defendants' objections are properly brought under Rule 12(b)(1), the Court must examine whether the objections are "jurisdictional" in nature or whether they instead go to an essential element of Ms. Hannah's claim for relief. *Arbaugh*, 546 U.S. at 511–14. Inasmuch as the ADA's definition of "employer" appears in the ADA's "definition" section (42 U.S.C. § 12111(5)) and does "not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts," *Arbaugh* compels the conclusion that the instant Motion is not jurisdictional in nature. *See Cobb*, 452 F.3d at 549. Deciding whether KOMAN qualifies as an "employer" is not a jurisdictional inquiry—rather, this highly fact-specific determination goes to the merits of Ms. Hannah's ADA claim.

Accordingly, the Court has subject matter jurisdiction over Ms. Hannah's ADA claims and will proceed to evaluate Defendants' arguments under Rule 12(b)(6).

### B.  Rule 12(b)(6) Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal alteration and quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

    **C.    Disability Discrimination (Count I) and Retaliation (Count II) in Violation of the ADA**

Defendants argue that KOMAN, as a subsidiary of an ANC, is not a "covered employer" under the ADA. (Mot., PAGEID # 99.) Whether an ANC is exempt from Title I of the ADA is relatively novel question—the Court's and the parties' research identified only one court (the District of Delaware) to have directly addressed the

8

issue. This Court finds the Delaware court's reasoning in *Pearson v. Chugach Govt. Services, Inc.*, 669 F. Supp. 2d 467 (D. Del. 2009), to be persuasive and, for the following reasons, concludes that Defendants are not exempt.

The *Pearson* court began its analysis by recognizing that its case was one of first impression raising a "question [that] lies at the confluence of two powerful federal interests." *Pearson*, 669 F. Supp. 2d at 470.

> On one hand, the federal government has recognized the quasi-sovereignty of Native American tribes and tribal entities. Towards that end, Congress and the Supreme Court have established exemptions and immunities to provide social and political space for Native American self-governance and self-determination. On the other hand, Congress has recognized the obstacles and injustice of discrimination, and promulgated an interlocking web of statutory prohibitions to reduce and eliminate the harms of employment discrimination. From the outset, the Court recognizes this opinion must reconcile these competing federal mandates.

*Id*.

The *Pearson* court then considered the Title VII exemption for Native American tribes and tribal entities—namely, whether Native American tribes are excluded from Title VII's definition of "employer." *Pearson*, 669 F. Supp. 2d at 470 (citing 42 U.S.C. § 2000e(b)). Similarly, the enabling statute for ANCs[3] exempts them from Title VII: "For the purposes of implementation of [Title VII], a Native Corporation ... or affiliates [of] which the Native Corporation owns [at least 25 percent] shall be within the class of entities excluded from the definition of

---

[3] ANCs were created after the implementation of Title VII by the 1971 Alaska Native Claims Settlement Act (the "ANCSA"). *Pearson*, 669 F. Supp. 2d at 471 (citing *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 209 (4th Cir. 2007), and Pub. L. 92–203, 85 Stat. 688 (1971), codified at 43 U.S.C. §§ 1601–1629a (2009)).

9

'employer' [in Title VII]." *Id.* at 471 (citing 43 U.S.C. § 1626(g)). As the *Pearson* court summarized:

> The purpose of the tribal exemption is tribal self-governance and economic development … Towards this end, Congress condones a Native American employment preference by carving out an exemption from Title VII. As the Supreme Court has explained:
>
> > There are [ ] affirmative provisions in the 1964 Act excluding coverage of tribal employment and of preferential treatment by a business or enterprise on or near a reservation. 42 U.S.C. ss 2000e(b) and 2000e–2(i). [ ] These 1964 exemptions as to private employment indicate Congress' recognition of the longstanding federal policy of providing a unique legal status to Indians in matters concerning tribal or 'on or near' reservation employment. The exemptions reveal a clear congressional sentiment that an Indian preference in the narrow context of tribal or reservation-related employment did not constitute racial discrimination of the type otherwise proscribed.

*Id.* (citing *Morton v. Mancari*, 417 U.S. 535, 547–48 (1974)). The rationale for the ANC exemption is similar:

> Like the federal policy supporting Title VII's tribal exemption, Congress established ANCs to further the "social and economic self-determination" of Alaskan Natives by providing for the self-management of their assets, *AFL–CIO v. United States*, 104 F. Supp. 2d 58, 72–73 (D.D.C. 2000). Similarly, the legislative history of § 1626(g) indicates that, like the Title VII tribal exemption, the ANC exemption was necessary to permit ANCs to have a Native American employment preference. *See* S. Rep. No. 100–201 at 26 (1987), U.S. Code Cong. & Admin. News 1987, pp. 3269, 3276 (the primary purpose of the ANCs' Title VII exemption was to "facilitate Alaska Native shareholder employment programs by resolving any uncertainty as to the applicability of [Title VII] to certain business enterprises in which [ANCs] participate"); *Malabed v. North Slope Borough*, 42 F. Supp. 2d 927, 934 (D. Alaska 1999) (construing § 1626(g) to allow ANCs to "discriminate in favor of Native Americans without violating Title VII," but also finding that it should not be construed to make "virtually every community in Alaska" exempt from anti-discrimination law).

*Id*. at 471–72. These Title VII exemptions should be construed narrowly: "[c]ourts, generally, have construed the tribal exemption narrowly and found tribal organizations liable under generally applicable statutes, unless liability would impinge upon the tribe's self-governance. *Id*. at 473; *see also Fox v. Portico Reality Services Office*, 739 F. Supp. 2d 912, 915 (E.D. Va. 2010) (recognizing that it is appropriate to construe the ANC Title VII exemption narrowly).

The *Pearson* court then turned to the ADA, finding that public accommodation cases were instructive: "Absent an explicit exemption, courts have concluded that for-profit tribal enterprises that are involved in interstate commerce fall within the scope of federal anti-discrimination law. Further, exposing employer liability under such circumstances does not subvert the policy goals of tribal exemptions because it does not interfere with the Native American employment preference." *Pearson*, 669 F. Supp. 2d at 475.

As with Title VII, Congress exempted Native American tribes from employment claims brought under Title I of the ADA. *Pearson*, 669 F. Supp. 2d at 474 (citing 42 U.S.C. § 12111(5)(B)(i)). But ANCs are not expressly exempted; rather, the enabling statute for ANCs "explicitly limits the scope of the ANC exemption[:] … 'the single-sentence exclusion for ANCs makes [it] clear twice' that the 'exclusion[] is limited to … Title VII.'" *Id*. (citing § 1626(g) and *Aleman*, 485 F.3d

11

at 211).[4] Both the nature of the tribal exemptions and by the ADA support this difference:

> Turning to the ADA, its broad language and legislative history emphasize its sweeping authority and national scope. Title I of the ADA lacks an ANC exemption; moreover, case law circumscribes its tribal exemption to tribal organizations functioning in a governmental role. While the boundary of the ADA's tribal exemption is imprecise, it is clear that for-profit tribal corporations operating in the ordinary course of interstate commerce fall outside that boundary.
>
> Finally, the growing role of ANCs as national commercial enterprises militates against a broad interpretation of its Title VII exemption. Defendants' parent company, Chugach Alaskan Corporation, operates "a traditional business, employing about 5,000 people in construction, environmental services, informational technology, telecommunications, and other areas." *Aleman*, 485 F.3d at 209. Consequently, when an ANC invokes immunity it is not promoting Native American employment nor protecting tribal self-governance, but avoiding normal anti-discrimination prohibitions having nothing to do with Native American ethnicity or tribal governance. Clearly, a broad application of the ANC exemption, under these circumstances, does not conform to the legislative purpose of § 1626(g).

*Id.* at 476.[5]

Although the Supreme Court has not yet addressed the exemption of ANCs from anti-discrimination laws, it recently ruled that ANCs are "Indian tribes" under the Indian Self-Determination and Education Assistance Act. *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338, 339 (2021). This ruling means that ANCs are

---

[4] In *Aleman*, the Fourth Circuit recognized that ANCs are exempt from Title VII claims but found that ANCs are appropriately subject to claims brought under 42 U.S.C. § 1981. *Aleman*, 485 F.3d at 211.

[5] Comparable to the defendant in *Pearson*, KOMAN does business throughout the United States in various industries, including construction, property management and security, environmental consulting and compliance, and electric utilities, among others. (ECF No. 22-4, PAGEID # 157–59.)

eligible for funds provided by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. *Id.* at 365–66. But the Supreme Court made clear that ANCs are fundamentally different than federally recognized Indian tribes, even if some statutes treat them similarly—"[a]s private companies incorporated under state law, ANCs have never been 'recognized' by the United States in a sovereign politician sense." *Id.* at 345.

Therefore, this Court adopts the *Pearson* court's conclusion that "the statutory language, legislative history, analogous case law, and federal policy all support one conclusion; under these facts, [ANCs] retain employer liability under Title I of the American with Disabilities Act." *Pearson*, 669 F. Supp. 2d at 476. Defendants' Motion is **DENIED** with respect to Ms. Hannah's ADA claims.

**D.    Disability Discrimination (Count III) and Retaliation (Count IV) in Violation of the Rehabilitation Act**

Defendants argue that Ms. Hannah fails to state claims under the Rehabilitation Act because KOMAN is not a "covered entity." (Mot., PAGEID # 97.)

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall solely by reason of his or her disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Defendants argue that they are not a "program or activity receiving Federal financial assistance"—even though they acknowledge they did collect a "one-time receipt of funds" under the CARES Act. (Mot., PAGEID # 98.)

13

Hannah alleges that KOMAN is a "program or activity receiving Federal financial assistance" and is a "program or activity conducted by an Executive agency" as defined by the Rehabilitation Act. (FAC, ¶¶ 10, 11.) These allegations are sufficient at this stage of the proceeding, and she may conduct discovery about Defendants' federal assistance and activities. After discovery, Defendants are free to move for summary judgment if the evidence does not support her allegations.

### E. Promissory Estoppel (Count V)

Any claim for promissory estoppel in the employment context is subject to Ohio's employment-at-will doctrine:

> In general, under Ohio's employment-at-will doctrine, "the employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. However, the Ohio Supreme Court has established two exceptions to the employment-at-will doctrine: (1) the existence of implied or express contractual provisions that alter the terms of discharge and (2) the existence of promissory estoppel where representations or promises have been made to an employee. *Id.*, citing *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104–105, 19 OBR 261, 264–265, 483 N.E.2d 150, 154–155.

*Robinson v. City of Cincinnati*, No. 1:21CV253, 2022 WL 2527906, at *2 (S.D. Ohio July 7, 2022) (Barrett, J.) (citing *Clark v. Collins Bus Corp.*, 736 N.E.2d 970, 972–73 (Ohio Ct. App. 2000)). To establish the promissory estoppel exception, a plaintiff must show that (1) the employer made a promise clear and unambiguous to the employee; (2) the employee relied on that promise; (3) the reliance was reasonable and foreseeable; and (4) injury resulted from the reliance. *Nealon v. Cleveland*, 746 N.E.2d 694, 699 (Ohio Ct. App. 2000) (citation omitted).

14

Ms. Hannah's claim fails on the first element. "According to Ohio law, the promise at a minimum not only must be sufficiently clear and unambiguous, but also must promise 'continued employment for a specific period.'" *Rhodes v. R&L Carriers, Inc.*, 491 Fed. App'x. 579, 585 (6th Cir. 2012) (citing *Steele v. Mara Ents., Inc.*, No. 09AP–102, 2009 WL 3494847, at *3 (Ohio Ct. App. Oct. 29, 2009)). Although Ms. Hannah alleges that Ms. Cascio represented to her that "she could count on retiring" from KOMAN (FAC, ¶ 24), an employer's promise of continued employment until some unspecified date, such as death or retirement, does not meet the first element of the claim. *Id.*; *see also Stewart v. Everyware Global, Inc.*, 68 F. Supp. 3d 759, 766 (S.D. Ohio 2014) (Graham, J.) (a plaintiff "cannot rely on nebulous representations by the employer").

Accordingly, Ms. Hannah's alleged reliance on a promise of employment until retirement does not state a claim for promissory estoppel under Ohio law.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED in part**, and Ms. Hannah's promissory estoppel claim (Count V) is **DISMISSED**. In all other respects, the Motion is **DENIED**.

   **IT IS SO ORDERED.**

                                        s/ Sarah D. Morrison
                                        **SARAH D. MORRISON**
                                        **UNITED STATES DISTRICT JUDGE**